O
JS-6

# United States District Court
# Central District of California

| | |
|---|---|
| DAVID WAGNER, | Case № 5:23-cv-00030-ODW (KKx) |
| Plaintiff, | **ORDER REMANDING CASE** |
| v. | |
| WAL-MART ASSOCIATES, INC., | |
| Defendant. | |

## I.  INTRODUCTION

On November 16, 2022, Plaintiff David Wagner initiated this action against Defendant Wal-Mart Associates, Inc. in state court for damages and penalties arising from Wal-Mart having terminated his employment while he was out sick with COVID-19.  (Notice of Removal ("NOR") ¶ 6, ECF No. 1; NOR Ex. 1 ("Compl."), ECF No. 1-1.)[1]  On January 6, 2023, Wal-Mart removed the action to this Court based on diversity jurisdiction.  (*See* NOR ¶¶ 9–32.)  For the following reasons, the Court finds Wal-Mart fails to establish that the amount in controversy exceeds $75,000 and accordingly **REMANDS** the case.

---

[1] The paragraph numbering in the NOR is irregular.  For the purpose of this Order, the Court cites to the paragraphs in the NOR as they appear, without adjusting for the irregularities, and, where this approach would create ambiguity, the Court cites to the NOR's page numbers.

## II. BACKGROUND

On October 14, 2021, Wagner began working for Wal-Mart as a Front-End Host. (Compl. ¶ 9.) On July 3, 2022, he began to feel ill, and he took leave from work starting the following day. (*Id.* ¶¶ 11–13.) On July 11, 2022, Wagner received positive test results for COVID-19, and his doctor ordered him to stay home until July 21, 2022. (*Id.* ¶ 14.)

Wagner stayed home as directed and attempted to inform Wal-Mart of his COVID-19 test results on July 11, 2022 and "almost every day thereafter." (*Id.* ¶¶ 14–15.) On July 21, 2022, Wagner returned to work but was informed by a Human Resources representative that Wal-Mart terminated his employment as of July 15, 2022, due to attendance issues. (*Id.* ¶¶ 20–22.) Wagner never received compensation for the days he was out of work recovering from COVID-19. (*Id.* ¶ 19.)

Wagner sued Wal-Mart in state court for (1) violation of the California 2022 COVID-19 supplemental paid sick leave laws, (2) violation of state sick leave laws, Cal. Lab. Code §§ 233, 234, 236.5, 2810.5; (3) retaliation, Cal. Lab. Code §§ 98.6, 6409.6(f)); (4) waiting time penalties, Cal. Lab. Code §§ 200–204; (5) retaliation for exercise of rights under the California Family Rights Act, Cal. Gov't Code § 12945.2; and (6) violation of state unfair competition law, Cal. Bus. & Prof. Code § 17200.

On January 6, 2023, Wal-Mart removed the action to this Court based on diversity jurisdiction. (*See* Compl. ¶¶ 9–32.) On February 24, 2023, the Court ordered the parties to show cause why this action should not be remanded for lack of diversity jurisdiction due to an insufficient amount in controversy. (Order to Show Cause ("OSC"), ECF No. 15.) On March 17, 2023, Wal-Mart filed a Response to the Court's OSC. (Resp., ECF No. 16.)

## III. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal courts have original jurisdiction where an action

arises under federal law, or where the plaintiff's citizenship is diverse from each defendant's citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332(a). "[T]he core principle of federal removal jurisdiction on the basis of diversity" is that diversity "is determined (and must exist) as of the time the complaint is filed and removal is effected." *Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002).

Federal courts have an obligation to determine the existence of subject matter jurisdiction, regardless of whether the parties raise the issue. *See Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). The court may raise the issue of subject matter jurisdiction on its own initiative at any stage in the litigation. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); *Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

"The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper," whether removal is challenged by an opponent or by the court. *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 290 (1938)).

## IV.   DISCUSSION

The issue here is whether the amount of money Wagner places in controversy with his COVID-19 sick leave-related claims is sufficient for the purposes of diversity jurisdiction. In its Response to the Court's Order to Show Cause, Wal-Mart indicates that the following categories of damages are at issue: (1) lost wages, (2) unpaid sick pay, (3) California Labor Code section 98.6 penalties; (4) California Labor Code section 203 penalties, (5) emotional distress damages, (6) punitive damages, and (7) attorneys' fees and costs. Wagner did not file a Reply to Wal-Mart's Response and therefore did not contest any of these categories. The Court adopts Wal-Mart's seven categories of damages for the purpose of this analysis and considers each category in turn.

### A. Lost Wages

The Court first considers the amount placed in controversy by Wagner's claim for lost wages. In determining the amount in controversy in an action involving lost wages, district courts often include as part of the amount in controversy "future wages up to the expected date of trial in the action." *Ulloa v. Cal. Newspaper Partners*, No. 2:20-cv-11776-JAK (AGRx), 2021 WL 6618815, at *6 (C.D. Cal. Oct. 21, 2021). That said, district courts have "decline[d] to project lost wages forward to some hypothetical trial date." *Fortescue v. Ecolab Inc.*, No. 2:14-cv-00253-FMO (RZx), 2014 WL 296755, at *2 (C.D. Cal. Jan. 28, 2014); *Ulloa*, 2021 WL 6618815, at *6 (collecting cases). Instead, several district courts have adopted "[a] projected future trial date within a year of removal." *Ulloa*, 2021 WL 6618815, at *7 (collecting cases).

Here, Wal-Mart argues that Wagner's lost wages, including those incurred up to the date of trial, will total $23,500. This is based on $500 in lost bi-weekly wages, multiplied by 47 pay periods between the termination date (July 15, 2022) and the "expected trial date" of October 2024. (NOR ¶ 26; Resp. 4.)

Here, Wal-Mart's assumption that the expected trial date in this trial is October 2024 is not reasonable and is not accepted by this Court. Wal-Mart makes its estimate based on average case life data derived from district-wide data. (Resp. 3 (citing Decl. Megan A. Mackie ISO NOR ¶ 3, Ex. 2 ("C.D. Cal. Statistics"), ECF No. 4-2.) However, these statistics include all cases, including cases originally filed in the Central District of California, complex class actions, False Claims Act cases, and other cases whose nature requires long proceedings before trial. A global case life average therefore says very little about the reasonableness of a particular trial date assumption in this matter.

Instead, this Court finds that the estimate proffered by the *Ulloa* court—one year between removal and trial—is a reasonable benchmark for this case. This is a single-employee case involving termination for having taken time off work to isolate and recover from COVID-19. Wagner makes no suggestion that discovery in this case will

be long or complex. Moreover, the pleadings are settled, and were settled as of the date of removal. (NOR ¶ 8; Answer, ECF No. 12.) The Court therefore finds one year, or 26 pay periods, from removal to trial to be a reasonable estimate.

Therefore, the true amount in controversy based on lost wages in this case **$19,500**. This is based on 39 pay periods from the date of termination (July 15, 2022) to the estimated date of trial upon removal (the first trial date a year out from removal, or January 9, 2024), rounded up to the nearest pay period, and multiplied by $500 per pay period.

**B.   Unpaid Sick Pay**

Wal-Mart points out that Wagner seeks paid leave time for the COVID-19 leave he took but for which he was not paid. (Resp. 4 (citing Compl. ¶ 43).) In the Complaint, Wagner alleges that "Defendants were required to grant Plaintiff's request for accommodation . . . . Plaintiff is to be compensated his regular rate of pay, but no more than $511 per day and $5,110 in the aggregate." (Compl. ¶ 43.) However, Wagner's proffered aggregate dollar amount does not appear to comport with Wal-Mart's own figures, such that the Court cannot conclude that there is any colorable possibility that Wagner will recover the full aggregate amount he alleges. If Wagner was out of work from, at a maximum, July 3 through July 21, then (rounding up) he was not paid for three weeks of work. In its NOR and Response, Wal-Mart states that Wagner's average biweekly pay was $500. Thus, Wagner is entitled to a maximum of $500/week * 3 weeks = $1,500 in unpaid sick pay. The Court includes an additional **$1,500** in the total sum.

**C.   Labor Code Section 98.6 Penalties**

Labor Code section 98.6 provides a cause of action for employees who are victims of employer retaliation. "In addition to other remedies available, an employer who violates [section 98.6] is liable for a civil penalty not exceeding ten thousand dollars ($10,000) per employee for each violation of this section, to be awarded to the employee or employees who suffered the violation." Cal. Lab. Code § 98.6(a)(3).

1  Wal-Mart argues that Wagner's third cause of action places $10,000 in controversy
2  based on this code section. (Resp. 5.) The Court accepts Wal-Mart's argument for the
3  purpose of this analysis and includes an additional **$10,000** in the total sum.

### D. Labor Code Section 203 Penalties

Labor Code section 203 provides for up to thirty days' pay as "waiting time penalties"—that is, as a penalty for the employer's failure to pay the employee all wages due upon termination. *See Drumm v. Morningstar, Inc.*, 695 F. Supp. 2d 1014, 1018 (N.D. Cal. Feb. 26, 2010) ("The so-called 'waiting time penalty' is 'equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days.'" (quoting *Mamika v. Barca*, 68 Cal. App. 4th 487, 493 (1998))). Wal-Mart calculates the potential maximum waiting time penalty in this case to be $2,065.50, based on a pay rate of $15.30/hour and an average 4.5 hour shift. The Court accepts Wal-Mart's legal argument and its application for the purpose of this analysis and includes an additional **$2,065.50** in the total sum.

### E. Emotional Distress Damages

The next category of damages is emotional distress damages. Wal-Mart points to several other cases where juries awarded employees between $250,000 and $3,000,000 in emotional distress damages. (NOR ¶ 23; Resp. 6–7.) From there, Wal-Mart argues that in this instance the Court should apply a 1:1 ratio between lost wages and emotional distress damages. (Resp. 7.) As trimmed by the foregoing analysis, this approach would imply that $19,500 in emotional distress damages is at issue.

However, Wal-Mart makes no attempt to analogize its cited cases to the present case. (*See id.* at 6–7.) Moreover, the Court's own review confirms that Wal-Mart's cited cases are dissimilar and involve detailed fact patterns where clearly culpable or emotional distress-inducing conduct was at issue. *See, e.g.*, *Gardenhire v. Hous. Auth.*, 85 Cal. App. 4th 236, 239–40 (2000) (involving extensive allegations and proof of culpable conduct, including a supervisor locking the employee out of her office, yelling at the employee, and giving the employee two highly unfavorable performance

evaluations). Here, by contrast, Wagner alleges simply that Wal-Mart terminated his employment while he was out sick with COVID-19. Beyond the basic facts of Wagner's case, Wagner alleges nothing suggesting any other Wal-Mart employee said or did anything that would tend to generate emotional distress, and he also alleges nothing beyond bare boilerplate in alleging exactly what kind of emotional distress he experienced. (*See, e.g.*, Compl. ¶ 72 ("In doing the acts herein alleged, Defendants acted with oppression, fraud, malice and in conscious disregard to Plaintiff's rights . . . .").) The Court therefore finds that Wal-Mart fails in its burden of demonstrating that emotional distress damages are at issue in an amount equal to Wagner's lost wages. Instead, as a reasonable assumption based on the allegations in this case and the Court's own knowledge of other cases, the Court assigns **$5,000** as the amount of emotional distress damages in controversy.

### F.    Punitive Damages

The next category of damages is punitive damages. Wal-Mart argues that in assessing the amount of punitive damages in controversy, the Court should apply a 1:1 ratio between lost wages and punitive damages. Based on the foregoing analysis trimming the lost wages to $19,500, this argument would imply a punitive damages value of $19,500. (Resp. 5–6.)

"In providing evidence to demonstrate the amount of punitive damages in controversy, the removing party may point to jury verdicts in analogous cases . . . ." *Ulloa*, 2021 WL 6618815, at *7 (quoting *Melendez v. HMS Host Family Rests., Inc.*, No. 2:11-cv-03842-ODW (CWx), 2011 WL 3760058, at *4 (C.D. Cal. Aug. 25, 2011)). Here, in its Notice of Removal, Wal-Mart cites a handful of cases in which juries awarded employee-plaintiffs over $75,000 in punitive damages alone. (NOR at 10–11.) However, other than by generally pointing out that its cited cases and the present case are single-employee employment law cases, Wal-Mart makes no meaningful attempt to analogize the facts of any of its cases the present case. As discussed above in the context of emotional distress damages, this case involves a straightforward set of facts in which

an employer terminated an employee's employment while the employee was out on a COVID-19 sick leave. Wagner does not allege any culpable conduct on Wal-Mart's behalf beyond the bare fact of the termination. It is also notable that Wagner does not affirmatively allege that he directly informed Wal-Mart of his COVID-19 diagnosis. (*See* Compl. ¶¶ 14–18.) This stands in stark contrast to Wal-Mart's cited cases, where the evidence showed a course of clearly culpable conduct on the part of the employer meriting a substantial award of punitive damages.

The Court therefore finds that Wal-Mart fails in its burden of demonstrating that punitive damages are at issue in an amount equal to Wagner's lost wages. Instead, as a reasonable assumption based on the allegations in this case and the Court's own knowledge of other cases, the Court assigns **$5,000** as the amount of punitive damages in controversy.

### G. Attorneys' Fees

Wal-Mart argues that Wagner's prayer for attorneys' fees places an additional $30,000 in controversy. (Resp. 8.) For the purpose of this analysis, the Court accepts Wal-Mart's assertion that statutory attorneys' fees may be available to Wagner under, at minimum, California Labor Code section 233 or California Government Code section 12965. (*See id.* at 7.)

"[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). But a removing defendant must "prove that the amount in controversy (including attorneys' fees) exceeds the jurisdictional threshold by a preponderance of the evidence," and must "make this showing with summary-judgment-type evidence." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 795 (9th Cir. 2018).

In assessing the amount of attorneys' fees placed in controversy for the purposes of diversity jurisdiction, several courts have employed a lodestar-type approach using an attorney hourly rate of $300. *Avila v. Kiewit Corp.*, No. 2:19-cv-05740-MWF

(JPRx), 2019 WL 4729641, at *6 (C.D. Cal. Sept. 26, 2019). Several courts have further assumed 100 hours of billed attorney time between the inception of the case and its final disposition. *Id.* ("A number of courts have held that 100 hours and an hourly rate of $300 is an appropriate and conservative estimate for employment cases."); *see, e.g.*, *Dias v. Burberry Ltd.*, No. 21-cv-192-MMA (JLB), 2021 WL 2349730, at *10 (S.D. Cal. June 9, 2021). Here, however, as with emotional distress damages and punitive damages, Wal-Mart does not analogize the present case to any of the cases it cites and thus fails to show that the assumption of 100 hours is reasonable. As discussed, this is a simple case with a simple fact pattern, based on Wagner taking COVID-19 sick leave and Wal-Mart terminating Wagner's employment for his having done so. The allegations span a few weeks, not months or years. Moreover, there are no allegations of discrimination based on a protected trait such as may require extensive discovery to uncover circumstantial evidence of a discriminatory motive. Based on the allegations and facts of this case, the Court finds that a maximum of 60 attorney hours is a reasonable assumption for the purpose of attorneys' fees in this matter. *See Ulloa*, 2021 WL 6618815, at *8 (assuming 60 hours of attorney work on single-employee case). This yields $300/hour * 60 hours = **$18,000** as the amount of attorneys' fees in controversy in this case.

**H.    Summary**

Summing up the foregoing categories of damages, Wal-Mart demonstrates that $19,500 + $1,500 + $10,000 + $2,065.50 + $5,000 + $5,000 + $18,000 = $61,065.50 is in controversy. Accordingly, Wal-Mart does not demonstrate by a preponderance of the evidence that the amount in controversy in this case exceeds $75,000, and it is necessary to remand the matter.

///

///

///

///

## V. CONCLUSION

For the foregoing reasons, the Court **REMANDS** the matter to the Superior Court of California, County of Riverside, Southwest Justice Center, 30755-D Auld Road, Murietta, CA 92563, Case No. CVSW2207726. The Court **VACATES** the Scheduling Conference and all other dates and deadlines in this matter. The Clerk of the Court shall close this case.

**IT IS SO ORDERED.**

April 11, 2023

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**